[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damages incident to a condemnation. As with some recent decisions; see, e.g., Commissioner ofTransportation v. Connemara Court, L.L.C., 46 Conn. Sup. 623, 763 A.2d 696
(2000); Bristol v. Milano, 45 Conn. Sup. 605, 732 A.2d 835 (2000); the present case has also come to the court on the wrong procedural track, as a result of directions given by the court clerk on instructions from the civil court manager of the judicial branch division of court operations. CT Page 11143 It was not entered on the court records as a separate civil action and the entry fee required by General Statutes § 52-259 was not paid. Rather, this appeal and application for review of the statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the matter, having the above title and docket number, that previously had been created for purposes of depositing with the clerk of the Superior Court, the assessed damages in the amount of $2,100. See Commissioner of Transportation v. Connemara Court, L.L.C., supra, 623; Bristol v. Milano, supra, 605.
J. Kent Hewitt, property owner, has appealed from the assessment of damages paid by the Commissioner of Transportation (COT) for the partial taking by eminent domain on April 1, 1999, pursuant to Section 13a-73 (b) of the General Statutes, of the premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, reconstruction and improvement of the highway commonly known as Oakland Street, Route 83. Said premises are situated in the Town of Manchester, on the easterly side of Oakland Street, Conn. Route 83, containing 608 square feet, more or less, bounded and described as follows, and shown on a map hereinafter referred to:
WESTERLY — by Oakland Street, Route 83, 55 feet;
 NORTHERLY — by land now or formerly of Lori Ann Fettig et al., 11 feet, more or less;
 EASTERLY — by Owner's remaining land, 55 feet, more or less, by a line designated "TAKING LINE", as shown on the map hereinafter referred to; and
 SOUTHERLY — by land now or formerly of Charles D. King, 12 feet, more or less.
Said premises are taken together with the following easement and right under, over and across portions of Owner's remaining land:
A full and perpetual easement to slope for the safety of the highway and remove, use or retain excavated material within an area of 235 square feet, more or less, located between and opposite Stations 1+360 and 1+380 right, Base Line, Present Oakland Street, Route 83, as more particularly shown on said map.
A right of entry to construct driveway as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State. CT Page 11144
Said premises are more particularly delineated on a map entitled: "TOWN OF MANCHESTER MAP SHOWING LAND ACQUIRED FROM J. KENT HEWITT BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION RECONSTRUCTION OF ROUTE 83 SCALE 1cm = 2.5m FEBRUARY 26, 1998 JAMES F. BYRNES, JR. P.E. TRANSPORTATION CHIEF ENGINEER-BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". Sheet 1 of 1 (76-175-4).
The statutory requirement preliminary to this proceeding is found in General Statutes § 48-24 as follows: "A condemning authority, if acquiring less than the total amount of a single unit of contiguous property, shall, if the remaining portion of such property does not conform to the area requirements of existing zoning regulations, obtain a zoning variance for such remaining portion of property from the local zoning board of appeals before condemning any portion of such property." For that reason, the COT, on September 28, 1998, obtained a variance from the Manchester Zoning Board "of Article II, Section 4.01.01 to permit a lot area of 9,842± square feet and a front yard of 18± feet to accommodate improvements to State Route 83." A certificate attesting to this variance was recorded on October 27, 1998, in the Manchester Land Records. This condemnation action then followed on April 1, 1999.
The subject property is located in the northeasterly section of Manchester on a major north-south throughway traversing the middle of town. The neighborhood is characterized as a single and multi-family residential area with various improvements scattered throughout. It is in close proximity to major east-west Interstate Routes 84 and 384. Access is also available to State Route 44, which runs from Hartford to Providence. A full interchange for I-84 is located at the north end of the neighborhood about 1/4 mile from the subject property. Major shopping areas are close to the north of the neighborhood. The location of the property is convenient to employment, educational and recreational facilities. There are no unfavorable factors affecting the marketability of the premises.
The subject property is located within a Residence A (RA) zone. Permitted uses include single-family dwellings. The minimum lot area is 12,000 square feet. Although containing only 10,450 square feet, the lot was legal in this nonconformance. Its front yard conformed to the zoning requirement. Under the provisions of General Statutes § 48-24, the COT obtained the zoning variance of the lot area, and additionally, of the front yard requirements on September 28, 1998, before proceeding to take the property.
The appraisers for the property owner and the COT agreed that the highest and best use of the property is for its continued use as a single-family dwelling in conformity to the present zoning requirements. CT Page 11145 They also agreed that the cost approach and income capitalization approach were not applicable to estimating market value of the subject property, relying instead, on utilizing the sales comparison approach.
The owner's appraiser analyzed three comparable sales, all being of older two-story frame single-family dwellings located in Manchester: (1) 400 East Center Street, zoned Residence A, sold on April 29, 1999, for $89,000; (2) 54 Middle Turnpike East, zoned Residence B, sold on March 31, 1999, for $68,000; and (3) 99 Oak Street, zoned Restricted Commercial, sold on January 8, 1999, for $71,900. With adjustments for the usual appraisal factors, he analyzed these comparable sales prices to range from $74,100 to $77,150, indicating that the market value by the sales comparison approach of the subject property before the taking on April 1, 1999, was $75,000.
In his after taking value computation, the owner's appraiser utilized the same three comparable sales, but with a large negative adjustment in his analysis of the remainder of the subject property, and its appeal to a buyer, from $8,000 to $10,000 because of its sloping topography, the reduction of the front yard between dwelling and a busy roadway from its conforming 30± feet to a non-conforming 18± feet, the reduction of lot area by 608 square feet to 9,842 square feet, and the loss of a large mature Norway maple tree. After his adjustments of appraisal factors, he calculated the value of his comparable sales to range from $64,100 to $69,150, and thereby estimated that the market value of the subject property after the taking was $65,000, resulting in damages of $10,000.
The state's appraiser utilized three other comparable sales, all being also of older two-story frame single family dwellings in Manchester: (1) 12 Doane Street, sold on May 25, 1999, for $89,900; (2) 71 Delmont Street, sold on December 15, 1999, for $89,000; and (3) 41 Summer Street, sold on April 26, 1999, for $88,000. With adjustments for appraisal factors, she analyzed these comparable sales prices to range from $84,600 to $86,400, indicating that the market value by the sales comparison approach of the subject property before the taking was $86,000.
In the after taking value computation, the state's appraiser utilized the same three comparable sales. After her adjustments of appraisal factors, she calculated the value of her comparable sales to range from $83,100 to $83,900, and thereby estimated that the market value of the subject property after the taking was $83,500, resulting in damages of $2,500.
"When only a part of a tract is taken for the public use, `just CT Page 11146 compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowenv. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. HighwayCommissioner, 169 Conn. 655, 659, 363 A.2d 1094. `The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v.Ives, 156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 184-85, 374 A.2d 163 (1976); Darling v.Waterford, 7 Conn. App. 485, 486 (1986).
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
The elements of the owner's damage due to the taking of April 1, 1999, are: (1) loss of fee to 608 square feet fronting on Oakland Street, State Route 83, a heavily traveled primary highway for through and local traffic north and south in Manchester, including the entire frontage of 55 feet of the subject property; (2) a full and perpetual easement to slope for the safety of the highway and remove, use or retain excavated material within an area of 235 square feet approximately 3.5 feet deep from the taking line and ending 16 feet from the front steps; (3) creating a non-conforming front yard and lot area requiring a permanent zoning variance obtained by the state preliminary to the taking; (4) loss of one large Norway maple tree 7 feet in circumference, in the southwesterly corner of the front yard and taking area, which provided shade and beauty to the dwelling and lot, as well as attractiveness, appeal and marketability to passing traffic, prospective purchasers and CT Page 11147 tenants; (5) loss of one large yew on the southwesterly property border and adjoining the maple tree; and (6) the contributory value of the large maple tree and the tall and wide bordering yew.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $86,000, and that the after taking value of the subject property is $81,700. Damages, therefore, are assessed at $4,300.
Judgment may enter for the appellant in the amount of $4,300, less $2,100 previously paid, or an excess of $2,200, with interest on such excess at 8% per annum from the date of taking on April 1, 1999, to the date of payment, together with costs and a reasonable appraisal fee of $1,800.
William C. Bieluch Judge Trial Referee